UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAL W. ATKINS,

      Petitioner,

                             CASE NO. 2:09-CV-10711
v.                           JUDGE DAVID M. LAWSON
                             MAGISTRATE JUDGE PAUL KOMIVES

MARY BERGHUIS

      Respondent.[1]
_____/

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION: The Court should conclude that petitioner's application for the writ of habeas corpus is barred by the one year statute of limitations contained in 28 U.S.C. § 2244(d). Accordingly, the Court should grant respondent's motion for summary judgment (docket #6).

II.    REPORT:

A.    *Procedural Background*

Petitioner Jamal W. Atkins is a state prisoner, currently confined at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan. Petitioner is serving a sentence of 100 months' to 40 years' imprisonment imposed as a result of his 2004 state court conviction for assault with intent to commit murder. Petitioner's application and the state court record reveal the following time line of the state court proceedings:

- Petitioner was convicted of assault with intent to commit murder pursuant to his guilty plea in the Genessee County Circuit Court. On September 14, 2004, the Court imposed its sentence.

---

[1] By Order entered this date, Mary Berghuis has been substituted in place of Cindi Curtin as the proper respondent in this action.

- Petitioner, through counsel, filed a delayed application for leave to appeal in the Michigan Court of Appeals, claiming that Michigan's sentencing procedure violated his Sixth Amendment right to a jury trial. On January 19, 2005, the court of appeals denied petitioner's delayed application for leave to appeal in a standard order, "for lack of merit in the grounds presented." *People v. Atkins*, No. 259194 (Mich. Ct. App. Jan. 19, 2005).

- Petitioner filed an application for leave to appeal in the Michigan Supreme Court. On October 7, 2005, petitioner's application for leave to appeal was denied in a standard order. *See People v. Atkins*, 474 Mich. 879, 704 N.W.2d 76 (2005).

- On November 29, 2006, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.509, raising claims of newly discovered evidence of innocence and ineffective assistance of appellate counsel. The trial court denied the motion on November 9, 2007. *See People v. Atkins*, No. 03-12701-FC (Genesee County, Mich., Cir. Ct. Nov. 9, 2007).

- Petitioner sought leave to appeal in the Michigan Court of Appeals. The court of appeals denied petitioner's in a standard order on application on June 8, 2008. *See People v. Atkins*, No. 282340 (Mich. Ct. App. June 2, 2008).

- Petitioner thereafter sought leave to appeal in the Michigan Supreme Court. That court denied petitioner's application for leave to appeal in a standard order on November 25, 2008. *See People v. Atkins*, 482 Mich. 1066, 757 N.W.2d 453 (2008).

On February 18, 2009, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] As grounds for the writ, petitioner raises each of the claims that he raised on direct appeal and in his motion for relief from judgment. Respondent filed an answer to the petition on September 25, 2009. In addition to other arguments, respondent contends that petitioner's habeas application is untimely.

B.   *Analysis*

---

[2]Although petitioner's application is file-stamped February 25, 2009, it is well-established that a habeas petition is deemed "filed" for purposes of the statute of limitations on the date the petitioner gives his motion to prison officials for mailing. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723 (N.D. Ohio 1998); *cf. Houston v. Lack*, 487 U.S. 266, 270 (1988). Petitioner's application is dated February 18, 2009. Accordingly, I assume that the petition was given to prison officials for mailing, and was thus "filed," on February 18, 2009.

2

1.  *Statutory Timeliness and Tolling*

Respondent argues that petitioner's application is barred by the one-year statute of limitations governing habeas petitions. On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996). In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions. Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[3]

As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run. The claims asserted in petitioner's habeas application do not implicate subparagraphs (B) through (D), and petitioner does not contend that any of these provisions is applicable here. Thus the commencement date established by subparagraph (A) applies here. Under

---

[3] The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6. Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

3

subparagraph (A) of § 2244(d),

> a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.
> In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

Here, petitioner's direct appeal concluded with the Michigan Supreme Court's denial of his application for leave to appeal on October 7, 2005. Petitioner's conviction became final 90 days later when the time for seeking *certiorari* in the United States Supreme Court expired. Petitioner's conviction therefore became final on January 6, 2006, and the limitations period began to run on that date. Thus, the limitations expired one year later, on January 6, 2007. Because petitioner did not file his habeas application until February 18, 2009, it is untimely unless the limitations period was tolled for any reason.

4

Under § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" Petitioner's motion for relief from judgment was filed in the trial court on November 29, 2006. By this time, the limitations period had run for 320 days. It is well established that subsection (d)(2) is a tolling provision and therefore a post-conviction motion only pauses the limitations clock; it "does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.2d 13, 17 (2d Cir. 2000); *see also*, *Brooks v. McKee*, 307 F. Supp. 2d 902, 905 (E.D. Mich. 2004) (Gadola, J.). Thus, when the limitations began after the Michigan Supreme Court denied his application for leave to appeal on the postconviction motion on November 25, 2008, petitioner had 45 days remaining on the limitations clock. From November 25, 2008, until petitioner gave his application to prison officials for mailing on February 18, 2009, an additional 85 days elapsed. Thus, under the statute petitioner's habeas application was late by 40 days.

2. *Equitable Tolling*

Petitioner has not filed a reply to respondent's answer, nor did he address the timeliness issue in his habeas application. Thus, petitioner does not quarrel with the foregoing calculation nor has he asserted any basis for concluding that his petition is timely. Presumably, because he argues it as a basis for excusing procedural default and as a substantive claim for relief, petitioner would argue that he is entitled to equitable tolling of the limitations period based on evidence of his actual innocence. The Court should conclude that petitioner is not entitled to equitable tolling on this basis. The Sixth Circuit has held that the actual innocence exception, which allows a court to review the merits of a habeas claim notwithstanding a procedural default, likewise exists for the habeas statute

of limitations. *See Souter v. Jones*, 395 F.3d 577, 598-602 (6th Cir. 2005). In order to be entitled to the actual innocence exception, a petitioner must present "new and reliable evidence that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 299 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted). It is not sufficient to show merely that the evidence raises a reasonable doubt which did not otherwise exist. *See id.* at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."). "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"). *See generally*, *Souter*, 395 F.3d at 589-90.

Here, petitioner does not point to any new, reliable evidence that he is actually innocent of the charges against him. In support of his innocence claim, petitioner contends that a video was made at a party in Mt. Morris, Michigan, on the night of the incident, which shows that he could not have committed the crimes in Flint, Michigan. According to petitioner:

> This video begins on July 6, 2003 at 2:36 a.m., and runs for one continuous hour, without a break in filming. There is a party being held in the basement of the residence, where Defendant is seen in the beginning of the film wearing blue denim jean shorts with a white shirt, that has red stitching, blue lining on the sleeve, and the logo Polo. He is also wearing white Nike high top tennis shoes.
> Defendant is seen surrounded by approximately fifth (50) to sixty (60)

6

guests at 2:47 a.m. At 2:51 a.m., Defendant is shown joining a dance line, drink in hand, which many other guests had formed. At 3:08 a.m., Defendant is filmed seated on a couch next to a female guest whom is wearing a blue and white shirt and blue jeans. Three twenty-three a.m. (3:23) Defendant is seen approaching a party table and refilling his cup with a bottle labeled Hennessey Liquor. At 3:34 a.m., Defendant enters the bathroom, and 3:36 a.m., is the end of the tape.

Pet.'r's Br., at 2.

Petitioner has not presented any affidavits, from either himself or other party goers, establishing the authenticity of this tape or its contents. Thus, there is no reliable evidence that the tape was actually filmed on the night in question, or that the party occurred where petitioner claims it did. In any event, even accepting as true petitioner's representations, the tape does not provide evidence of petitioner's actual innocence. By petitioner's own account, the tape does not begin until 2:36 a.m., and petitioner is not seen on the tape until 2:47 a.m. He is last seen on the tape at 3:34 a.m. At the preliminary examination, several witnesses who knew petitioner identified him as the shooter, as did a codefendant. Further, police officers observed petitioner dispose of a gun consistent with the gun used in the assault. The witnesses gave inconsistent testimony regarding the time of the assault, ranging from shortly after 2:00 a.m. until after 4:00 a.m. While the purported videotape accounts for part of this time frame, there is a portion of the time frame both before and after petitioner's appearance on the tape in which petitioner could have committed the assault. Contrary to petitioner's argument, the distances involved were not so great that he could not have committed the crimes and appeared on the videotape at the times shown.[4]

---

[4] According to the mapquest.com website, the distance from the center of Flint to the center of Mt. Morris is 8.14 miles, a fact of which the Court may take judicial notice. *See Saco v. Tug Tucana Corp.*, 483 F. Supp. 2d 88, 93 n.4 (D. Mass. 2007) (taking judicial notice of distance between points reflected on mapquest.com and citing cases doing the same). Further, the witnesses testified that the assault occurred on East Flint Park Boulevard, near the intersection with Saginaw Street. That intersection is in the northern part of Flint, closer to Mt. Morris, and is only 6.06 miles from the center of Mt. Morris.

In light of the positive identifications of petitioner by people who were familiar with him, the wide time range in which the assaults may have occurred, and the opportunity that petitioner had to commit the crime either before or after the times he allegedly appears on the videotape, the videotape does not provide new, reliable evidence which makes it more likely than not that no jury would have convicted him. Accordingly, the Court should conclude that petitioner has failed to establish his actual innocence.

C.     *Recommendation Regarding Certificate of Appealability*

   1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to

8

deserve encouragement to proceed further.'"'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.  *Analysis*

Where, as here, a petition is dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such a case, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district

9

court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added). As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. at 486.

If the Court accepts the foregoing recommendation, petitioner cannot show that the Court's ruling on the procedural question is reasonably debatable. As noted above, there is no question that petitioner's application is untimely under § 2244(d). Further, in light of the evidence presented at the preliminary examination and the failure of the allegedly exculpatory videotape to establish that it would not have been possible for petitioner to have committed the crime, it is not reasonably debatable that petitioner has failed to clear the exceptionally high hurdle established by the actual innocence exception.

D.  *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's application for the writ of habeas corpus is barred by the statute of limitations governing habeas petitions. Accordingly, the Court should grant respondent's motion for summary judgment and dismiss the petition. Alternatively, the Court should deny the petition on the merits. If the Court accepts either of these recommendations, the Court should deny the certificate of appealability..

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal.

*Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 5/21/10

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on May 21, 2010.

s/Eddrey Butts
Case Manager

11